IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| JAMES WILLIAMS,<br>   Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil No. 3:15cv125 (JAG) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
|    Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

On July 9, 2012, James Williams ("Plaintiff") applied for Social Security Disability

Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act

("Act"), alleging disability from a back injury and breathing problems, with an alleged onset date

of May 21, 2012. The Social Security Administration ("SSA") denied Plaintiff's claims both

initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied

Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for

review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g),

arguing that the ALJ erred in affording light weight to the opinion of one of Plaintiff's treating

physicians, in failing to properly assess Plaintiff's credibility and in posing legally insufficient

hypothetical questions to a vocational expert ("VE"). (Pl.'s Mem. of Law in Supp. of Social

Security Appeal ("Pl.'s Mem") (ECF No. 16) at 7-15). This matter now comes before the Court

for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-

motions for summary judgment, rendering the matter now ripe for review.[1] For the reasons that

follow, the Court recommends that Plaintiff's Motions for Summary Judgment (ECF No. 15) be

DENIED, that Defendant's Motion for Summary Judgment (ECF No. 19) be GRANTED and

that the final decision of the Commissioner be AFFIRMED.

## I.     PROCEDURAL HISTORY

On July 9, 2012, Plaintiff filed applications for DIB and SSI with an alleged onset date of

May 21, 2012. (R. at 145.) The SSA denied these claims initially on September 20, 2012, and

upon reconsideration on December 24, 2012. (R. at 542, 549.) At Plaintiff's written request, the

ALJ held a hearing on May 20, 2014. (R. at 551-84.) On June 26, 2014, the ALJ issued a

written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as

disabled under the Act. (R. at 11-20.) On December 29, 2014, the Appeals Council denied

Plaintiff's request for review, rendering the ALJ's decision the final decision of the

Commissioner subject to review by this Court. (R. at 4.)

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.*

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as

---

[1]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc.
R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of
birth (except for year of birth), and any financial account numbers from its consideration of
Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to
only the extent necessary to properly analyze the case.

adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (summarizing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite his physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether

3

the claimant can perform his past work given his RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On May 20, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a VE testified. (R. at 553.) On June 26, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 11-20.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 12-13.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since May 21, 2012, the alleged onset date. (R. at 13.) At step two, the ALJ found that Plaintiff had the severe impairments of an umbilical hernia, obstructive sleep apnea, spondylosis of the lumbosacral spine, hypertension, a vitamin D deficiency and human immunodeficiency virus ("HIV"). (R. at 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. at 14.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (R. at 14.) He could frequently lift less than ten pounds and occasionally lift ten pounds. (R. at 14.) He could sit for six hours in an eight-hour workday. (R. at 14.) He could stand or walk for two hours in an eight-hour workday. (R. at 14.) He could constantly push or pull at the sedentary strength level. (R. at 14.) He could occasionally climb ramps or stairs, but could never climb ladders, ropes or scaffolds. (R. at 14.) He could occasionally balance, stoop, kneel, crouch or crawl. (R. at 14.) He must use a cane to

4

ambulate. (R. at 14.)  He must be allowed to sit for one hour and then stand for two to three

minutes intervals during the workday.  (R. at 14.)

     At step four, the ALJ found that Plaintiff could not perform any past relevant work. (R.

at 18.)  At step five, the ALJ determined that Plaintiff could perform other jobs existing in

significant numbers in the national economy. (R. at 19.)  Therefore, the ALJ found that Plaintiff

did not qualify as disabled under the Act. (R. at 20.)

## IV.   ANALYSIS

     Plaintiff, forty-four years old at the time of this Report and Recommendation, previously

worked as a line cook, a kitchen supervisor, a kitchen manager and a maintenance worker. (R. at

153.)  He applied for DIB and SSI, alleging disability from a back injury and breathing

problems, with an alleged onset date of May 21, 2012. (R. at 145.)  Plaintiff argues that the ALJ

erred in affording little weight to the opinion of one of his treating physicians, in failing to

properly assess his credibility and in posing legally insufficient hypothetical questions to the VE.

(Pl.'s Mem. at 7-15.)   For the reasons set forth below, the Court finds that the ALJ did not err in

his decision.

### A.     The ALJ did not err in affording little weight to Dr. Climo's opinion.

     Plaintiff argues that the ALJ erred in affording little weight to the opinion of one of his

treating physicians, Michael Climo, M.D. (Pl.'s Mem. at 7).  Defendant responds that substantial

evidence supports the ALJ's RFC findings and that the ALJ reasonably declined to give less than

controlling weight to Dr. Climo's opinion. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof

("Def.'s Mem.") (ECF No. 19) at 10-15.)

     During the sequential analysis, when the ALJ determines whether the claimant has a

medically-determinable severe impairment, or combination of impairments, that would

5

significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512(a)-(e), 404.1527, 416.912(a)-(e), 416.927. When the record contains a number of different medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. 20 C.F.R. §§ 404.1520b(a), 416.920b(a). If, however, the medical opinions are inconsistent internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2)-(6), (e), 416.927(c)(2)-(6), (e).

Under the applicable regulations and case law, the ALJ must give a treating source's opinion controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion is inconsistent with other evidence or when it is not otherwise well-supported. 20 C.F.R. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d). Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up specious inconsistences." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, the Court should not

disturb an ALJ's decision regarding the weight afforded a medical opinion unless the ALJ failed to give a sufficient reason for the weight afforded. 20 C.F.R. § 404.1527(d).

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine whether a claimant is disabled as that term is defined under the Act. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Although the regulations direct the ALJ to explicitly apply these enumerated factors only to treating sources, the ALJ could apply those same factors when evaluating opinion evidence from "other sources." SSR 06-03p.

In this case, the ALJ gave no treating source controlling weight while having to reconcile opinions from several different sources, including Dr. Climo, an infectious disease specialist. In October 2013, Plaintiff started seeing Dr. Climo for his HIV infection. (R. at 384.) On March 18, 2014, Dr. Climo completed a Residual Functional Capacity Questionnaire on Plaintiff's behalf. (R. at 287-88.) Dr. Climo based his answers on a one-hour visit that occurred on February 27, 2014. (R. at 288.) Dr. Climo opined that Plaintiff could occasionally carry less than ten pounds; walk less than one block without resting; sit for three hours total per eight-hour day; and stand for three hours total per eight-hour day. (R. at 287-88.) Plaintiff would need to take unscheduled breaks every one to two hours for fifteen minutes. (R. at 288.) Plaintiff would miss work once or twice per month. (R. at 287.) Dr. Climo also opined that Plaintiff was not physically capable of working eight hours a day, five days a week on a sustained basis. (R. at

7

287.)  The ALJ gave little weight to Dr. Climo's RFC assessment, because Dr. Climo appeared to have based his opinion on a single examination on February 27, 2014, and Dr. Climo's opinion was not supported by the objective medical evidence.  (R. at 18.)  Furthermore, Dr. Climo did not treat Plaintiff for his musculoskeletal impairment on which Dr. Climo based his opinion.  (R. at 18.)  Substantial evidence supports the ALJ's decision.

The ALJ appropriately discounted Dr. Climo's opinion, because Dr. Climo based his opinion on a single examination of Plaintiff's musculoskeletal capacity.  *See* 20 C.F.R. §§ 404.1527(c) (noting that frequency of examination and extent of treatment relationship constitute factors for evaluation of medical opinions); *see also* SSR 06-03p (discussing weighing of opinions and appropriateness of affording more relative weight to certain opinions than to others based on length of treatment).  In the RFC questionnaire, Dr. Climo stated that his based his answers on a one-hour examination on February 27, 2014.  (R. at 288.)

Further, Dr. Climo's treatment records from previous appointments do not contain any information relating to Plaintiff's musculoskeletal capacity.  (R. at 346, 374-76, 378-86.)  On November 13, 2013, Plaintiff met with Dr. Climo for ongoing HIV care.  (R. at 384.)  Plaintiff reported no problems other than his HIV.  (R. at 384.)  Even though Dr. Climo noted "back pain" as one of Plaintiff's active problems, he did not examine Plaintiff's neck or extremities.  (R. at 385-86.)  On January 7, 2014, Plaintiff returned to Dr. Climo for a follow-up appointment for his HIV.  (R. at 378.)  Again, Dr. Climo's physical examination note lacks any information regarding Plaintiff's neck and extremities.  (R. at 380.)  Accordingly, the ALJ did not err in his treatment of Dr. Climo's opinion.

Moreover, medical records do not fully corroborate Dr. Climo's opinion, and they actually support the ALJ's RFC findings.  On March 31, 2012, Plaintiff presented to the

emergency room at Rappahannock General Hospital for back pain after falling off a dumpster the day before. (R. at 199.) Ms. Tania Keyser, R.N. examined Plaintiff. (R. at 199.) Ms. Keyser noted that Plaintiff arrived ambulatory with a steady gait. (R. at 199.) Plaintiff appeared comfortable and in no acute distress. (R. at 199.) Plaintiff denied parathesias and extremity weakness. (R. at 199.) Plaintiff also denied neck pain and had full range motion in his neck. (R. at 199.) Plaintiff received a morphine injection and Percocet tablets. (R. at 200.) Plaintiff reported that the pain had improved and that he was ready to return home after two hours in the emergency room. (R. at 198.) Emmeth Daniel, M.D. discharged Plaintiff in stable condition. (R. at 199-200.)

Plaintiff's September 27, 2012, MRI revealed disc bulging and smooth left posterolateral disc protrusions at L3-4 and L4-5. (R. at 228.) There was also mild spinal stenosis and lateral recess stenosis at L3-4 and lateral recess stenosis on the left at L4-5. (R. at 228.) However, no pathologic signal arising from skeletal structures was observed. (R. at 228.) Plaintiff's conus medullaris and visualized distal cord showed no abnormality. (R. at 228.) His paraspinal soft tissues appeared intact. (R. at 228.) There was no definite focal nerve root encroachment throughout. (R. at 228.)

On December 5, 2012, Plaintiff presented to Riverside Health System Rehab for an initial physical therapy evaluation. (R. at 264.) Celia Lanker, D.P.T. observed that Plaintiff ambulated into the clinic with a normal range of motion and a normal gait pattern. (R. 264.) Plaintiff sat and stood without difficulty or apparent distress. (R. at 264.) Plaintiff exhibited normal seated and standing postures. (R. at 264.) Dr. Lanker noticed that Plaintiff's behavior pattern changed once the evaluation started — he ambulated with an antalgic gait pattern and could not get out of his chair in the evaluation room. (R. at 264.) On January 9, 2013, after three sessions, Dr.

Lenker discontinued Plaintiff's physical therapy sessions, because Plaintiff had met his goals. (R. at 274.) Dr. Lenker observed a reduction in overall pain level with increased activity tolerance and range of motion. (R. at 274.)

On December 10, 2012, Plaintiff saw John Barsanti, M.D. at Tappahannock Centers for Interventional Pain Management for back pain. (R. at 275.) Dr. Barsanti diagnosed Plaintiff with lumbar disc disorder with myelopathy. (R. at 277.) However, Plaintiff denied loss of range of motion and appeared in no acute distress. (R. at 276-77.) Plaintiff's head and neck exams showed normal results. (R. at 277.)

On September 3, 2013, Plaintiff presented to McGuire VA Medical Center ("VAMC") for bacteremia. (R. at 353-56.) Plaintiff returned home on September 20, 2013, and Angela Gentili, M.D. opined that Plaintiff could return to work on the same day. (R. at 406.) Gwendolyn Burnett, R.N. examined Plaintiff and noted that Plaintiff's head and neck were grossly normal without any obvious problems. (R. at 411-12.) Ms. Burnett also noted that Plaintiff could move all extremities equally. (R. at 413.)

Finally, Plaintiff's own statements support the ALJ's decision. On September 3, 2012, Plaintiff completed a function report. (R. at 161-68.) Plaintiff stated that he helped his wife cook and dress his children. (R. at 161-62.) He performed household chores such as dusting furniture, vacuuming, washing dishes and laundry. (R. at 163.) On May 20, 2014, Plaintiff testified during the hearing with the ALJ that he did not have problems using his hands. (R. at 563.) Plaintiff also testified that he was in a choir at his church and that he enjoyed singing with his friends. (R. at 565.) These statements show that Plaintiff's abilities exceeded Dr. Climo's assessment. Therefore, substantial evidence supports the ALJ's opinion to afford Dr. Climo's opinion little weight.

**B.     The ALJ did not err in assessing Plaintiff's credibility.**

Plaintiff argues that the ALJ failed to apply the appropriate legal standard in assessing

Plaintiff's credibility.  (Pl.'s Mem. at 13-15.)  Defendant responds that the ALJ appropriately

evaluated the credibility of Plaintiff's subjective complaints.  (Def.'s Mem. at 16-17.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant

can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20

C.F.R. §§ 416.920(e)-(f), 416.945(a)(1).  The RFC must incorporate impairments supported by

the objective medical evidence in the record and those impairments that are based on the

claimant's credible complaints.  In evaluating a claimant's subjective symptoms, the ALJ must

follow a two-step analysis.  *Craig*, 76 F.3d 585, 594 (4th Cir. 1996); *see also* SSR 96-7p; 20

C.F.R. §§ 404.1529(a) and 416.929(a).  The ALJ must first determine whether there is an

underlying medically determinable physical or mental impairment or impairments that

reasonably could produce the individual's pain or other related symptoms.  *Id.*; SSR 96-7p, at 1-

3.  In doing so, the ALJ must consider all of the medical evidence in the record.  *Craig*, 76 F.3d

at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC

assessment must be based on *all* of the relevant evidence in the case record") (emphasis added).

If the underlying impairment reasonably could be expected to produce the individual's pain, then

the second part of the analysis requires the ALJ to evaluate a claimant's statements about the

intensity and persistence of the pain and the extent to which it affects the individual's ability to

work.  *Craig*, 76 F.3d at 595.  The ALJ's evaluation must take into account "all the available

evidence," including a credibility finding of the claimant's statements regarding the extent of the

symptoms and the ALJ must provide specific reasons for the weight given to the individual's

statements.  *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (R. at 16.) The ALJ cited Plaintiff's function report, hearing testimony and medical records in support of his view. (R. at 15-17.) The ALJ then found that the objective findings of treating sources, the generally conservative nature of Plaintiff's medical care, and Plaintiff's admitted activities and functional capabilities diminished his credibility regarding the frequency and severity of his symptoms and the extent of his functional limitations. (R. at 17.) Additionally, the ALJ

diminished Plaintiff's credibility on the basis of Plaintiff's own statements and objective medical records. (R. at 18.) Therefore, the ALJ properly analyzed Plaintiff's credibility.

Plaintiff's medical records support the ALJ's determination. On March 31, 2012, Dr. Daniel noted that Plaintiff had normal lower extremity range of motion and no motor or sensory deficit. (R. at 198.) Plaintiff's lumbar spine x-ray showed normal results. (R. at 198.) On December 6, 2012, Dr. Lenker observed that Plaintiff ambulated into the clinic with a normal range of motion and a normal gait pattern. (R. at 264.) He could also sit and stand without difficulty or apparent distress. (R. at 264.) But Dr. Lenker noted that once the evaluation began, Plaintiff ambulated with an antalgic gait pattern and could not get out of his chair. (R. at 264.) On January 9, 2013, Dr. Lenker again noted that Plaintiff walked into the clinic with a normal gait pattern, but that he ambulated in distress after entering the clinic's gym. (R. at 274.) On that day, Dr. Lenker discontinued physical therapy for Plaintiff, because Plaintiff showed a reduction in overall pain level with increased tolerance and range of motion. (R. at 274.) On September 20, 2013, Ms. Burnett noted that Plaintiff's head and neck were grossly normal. (R. at 412.) She observed positive circulation and sensation in Plaintiff's extremities. (R. at 412.) Plaintiff moved all extremities equally. (R. at 413.)

Similarly, Plaintiff's own statements — both to treatment providers and made during her hearing before the ALJ — support the ALJ's credibility determination. Plaintiff stated in his function report that he could do household chores like dusting furniture, vacuuming, washing dishes and doing laundry. (R. at 163.) Plaintiff also stated that he went outside daily and when going out he drove or rode in a car — although he could not drive alone, because he would fall asleep at the wheel. (R. at 164.) Plaintiff testified during the hearing with the ALJ that he did not have any problem using his hands. (R. at 563.) Plaintiff also testified that he could use a

computer to take college courses. (R. at 566.) Therefore, substantial evidence supports the ALJ's credibility determination.

### C.   The ALJ properly performed Step Five of the analysis, because he properly assessed Plaintiff's limitations and incorporated them into the hypothetical questions to the VE.

Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff could perform other jobs existing in significant numbers in the national economy, because the hypothetical questions presented to the VE did not accurately reflect Plaintiff's limitations. (Pl.'s Mem. at 15.) Defendant responds that the ALJ's hypothetical questions accurately captured Plaintiff's limitations. (Def.'s Mem. at 17-18.)

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, the claimant can perform other work existing in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f). The Commissioner can carry her burden in the final step with the testimony of a VE. 20 C.F.R. § 404.1560. The ALJ must pose hypothetical questions to the VE that accurately represent the claimant's RFC based on all evidence in the record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Walker*, 889 F.2d at 50.

In this case, the ALJ asked the VE to assume that a person of the same age, education, and work experience as Plaintiff could:  frequently lift and carry less than ten pounds; occasionally lift and carry ten pounds; sit for six hours in an eight-hour day; stand or walk for two hours in an eight-hour day; and, constantly push or pull at the same carrying exertional level.

14

(R. at 581.)  The person could occasionally climb stairs or ramps, but could never climb ladders ropes or scaffold.  (R. at 581.)  The person could occasionally balance, stoop, kneel, crouch or crawl.  (R. at 581.)  The ALJ asked whether there were any jobs at the sedentary level that the person could perform.  (R. at 581.)  The VE answered that the person could perform sedentary work as an addresser, with 18,000 positions in the national economy; as a call-out operator, with approximately 15,000 positions in the national economy; and as a charge-account clerk, with approximately 30,000 positions in the national economy.  (R. at 581.)  Based on the VE's testimony, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy and, therefore, is not disabled.  (R. at 20.)

Plaintiff argues that the hypothetical questions posed to the VE did not accurately reflect Plaintiff's limitations, because the question did not include the limitations contained in Dr. Climo's opinion.  (Pl.'s Mem. at 15.)  However, as discussed above, the ALJ gave little weight to Dr. Climo's opinion, because it was inconsistent with other medical evidence.  Having concluded that substantial evidence supports the ALJ's decision to give Dr. Climo's opinion little weight, the Court holds that the hypothetical questions posed to the VE adequately reflected Plaintiff's limitations.  *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (finding that substantial evidence supported the ALJ's decision when the hypotheticals included all limitations that were supported by the records as a whole).  Accordingly, substantial evidence supports the ALJ's decision that jobs that Plaintiff can perform exist in significant numbers in the national economy.

## V.   CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motions for Summary Judgment (ECF No. 15) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 19) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

15

Let the Clerk forward a copy of this Report and Recommendation to the Honorable John Gibney, Jr. and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: _December 31, 2015_